UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| SANDRA LOVEDAY, as Administrator of the Estate of BONNIE ELLEN JONES, and individually, as next of kin and for the wrongful death of BONNIE ELLEN JONES, Plaintiff, | ) | |
| v. | ) | No. 3:13-CV-333 (VARLAN/SHIRLEY) |
| SSC ANDERSONVILLE OPERATING CO., LLC, d/b/a NORRIS HEALTH AND REHABILITIATION CENTER, Defendant. | ) | |

**REPORT AND RECOMMENDATION**

This case is before the undersigned pursuant to 28 U.S.C. § 636, the Rules of this Court, and the referral of the District Judge. Now before the Court is Defendant's Motion to Compel Arbitration and Stay Lawsuit [Doc. 4], ("Motion to Compel"). This motion is fully briefed, and the parties presented oral arguments to the undersigned at a hearing conducted December 6, 2013. The Court finds that the Motion to Compel is ripe for adjudication, and for the reasons stated herein, the undersigned will **RECOMMEND** that it be **DENIED**.

## I. BACKGROUND

Plaintiff Sandra Loveday brings the instant suit as next of kin for her deceased mother, Bonnie Ellen Jones. At the time of her death, Ms. Jones was a resident of the Norris Health and Rehabilitation Center ("NHRC"), which is operated by SSC Andersonville Operating Company ("SSC"). Ms. Loveday presents claims for negligence against both NHRC and SSC relating to the death of Ms. Jones.

The background relevant to the instant motion relates to Ms. Jones's admission to NHRC. At the time of the admission, Ms. Loveday, on behalf of Bonnie Ellen Jones, executed various documents so that Ms. Jones would be admitted to the NHRC. The documents executed included a Dispute Resolution Program ("DRP") [Doc. 5-1], which contained an agreement to submit to disputes relating to Ms. Jones's stay at the facility to binding arbitration. The title of the document is: **DISPUTE RESOLUTION PROGRAM.** [Id. (emphasis in the original)]. The second paragraph of the document begins by stating: **BY AGREEING TO PARTICIPATE IN THE DRP, THE PARTIES WAIVE THEIR RIGHT TO A JUDGE OR JURY TRIAL.** [Id. (emphasis in the original)]. The DRP defines the parties to the agreement as: "[A] the resident and all family members who would have a right to bring a claim in state court on behalf of the resident or the resident's estate, a legal representative, or any other person that may have a cause of action relating to the resident's stay in the facility." [Id. at 2].

The DRP offered three alternative signature lines to Ms. Loveday or Ms. Jones. First, Ms. Jones, if physically able and mentally competent, could sign the DRP herself on a line described as "Signature of Resident." Second, if Ms. Jones was competent but not physically able to sign, Ms. Loveday could sign the DRP on a line described as "Signature of Representative." Finally, a third alternative stated that if Ms. Jones was "adjudged incompetent," Ms. Loveday could sign at a line described as "Signature of Legal Representative or Family Member." This third line was preceded by a statement attesting that the signatory had authority to sign the agreement on behalf of the resident.

Ms. Loveday elected to sign at the third signature line, and her signature on the DRP appears as:

If the resident is adjudged incompetent, complete this section:

*I am the spouse, responsible party, legal guardian or power of attorney of the resident and have the authority to sign the Agreement on his/her behalf. In signing this Agreement the legal representative or family member binds both the resident and themselves individually, as well as other parties as specified in the Agreement.*

Sandra Loveday — Date 12-30-11
Signature of Legal Representative or Family Member

SANDRA LOVEDAY
Print Name

Debbie King — Date 12-30-11
Signature of Facility Witness #1

Debbie King
Print Name

Ms. Loveday also executed a Resident Admission Agreement ("RAA") [Doc. 5-2]. Again, the RAA offered a variety of signature lines. Ms. Loveday declined to sign as either Ms. Jones's legal representative or to sign as her agent, and instead, she signed a "Responsible Party," *e.g.* "[f]amily member." Her signature on the RAA appears as:

Bonnie Jones
Resident Name (Print)

Resident Signature

Legal Representative Signature (e.g., Guardian)

Agent Signature (e.g., Agent through health care Power-of-Attorney or Surrogate Decision-maker)

Sandra Loveday
Responsible Party Signature (e.g., Family member)

Debbie King
Facility Representative Signature

12-30-11
Date

## II. POSITIONS OF THE PARTIES

Defendant SSC, who does business as NHRC, maintains that the DRP is enforceable under the Federal Arbitration Act and argues that both federal and state law favor arbitration. [Doc. 5 at 2-5]. SSC argues that Ms. Loveday had apparent authority to act as Ms. Jones's agent, and therefore, both Ms. Jones and Ms. Loveday (as administrator of Ms. Jones's estate) are bound by Ms. Loveday's signature. [Id. at 6-7]. SSC maintains that the arbitration provision contained in the DRP is valid and is not unconscionable. [Id. at 9-10].

Ms. Loveday argues that she did not have actual or apparent authority to execute the DPR on behalf of her mother. [Doc. 7 at 3]. Ms. Loveday has filed an affidavit stating that an employee of NHRC asked if she had a power of attorney for Ms. Jones, and Ms. Loveday replied that she did not. [Doc. 7-1 at ¶ 4]. The same employee asked if Ms. Jones had a living will, and Ms. Loveday stated that Ms. Jones did not have a living will. [Id.].

Ms. Loveday cites the Court to Robinson v. SSC Newport Operating Co., LLC, No. 2:10-CV-265, 2011 WL 4431103 (E.D. Tenn. Sept. 22, 2011), in which the Honorable J. Ronnie Greer, United States District Judge, addressed the issue of whether a wife could sign the same DRP form and thereby bind her husband, who was to be a resident of a the facility. Judge Greer found that the wife did not bind her husband, and he declined the request by the defendant in Robinson to refer the case to arbitration.[1] Ms. Loveday alleges that the facility in Robinson is a sister facility to the facility in this case and that the DRP is identical. Ms. Loveday cites Robinson and other Tennessee state-court cases in support of her position. [Doc. 7 at 6-8]. She also argues that the DRP was a contract of adhesion under the circumstances in which it was presented to her. [Id. at 9-11].

---

[1] Attorney David Eaton served as co-counsel for the defendant in Robinson. Mr. Eaton also serves as counsel for the Defendant in the instant case. The Defendant did not, however, cite the Court to Robinson in their opening brief, see Doc. 5.

The Defendant replies that the DRP is not unconscionable and is not a contract of adhesion. [Doc. 8 at 2-5]. The Defendant reiterates that Ms. Loveday had authority to bind Ms. Jones. [Id. at 6-7]. In its reply, Defendant did not discuss Judge Greer's decision in Robinson or attempt to distinguish it.

On the day before the hearing, Ms. Loveday filed a supplemental brief [Doc. 16], stating the rate of arbitration fees, and the undersigned has considered the same to the extent it is relevant.

## III. ANALYSIS

The undersigned finds the decision in Robinson v. SSC Newport Operating Co., LLC, No. 2:10-CV-265, 2011 WL 4431103 (E.D. Tenn. Sept. 22, 2011) to be persuasive authority on this issue. In this case, the undersigned finds that the Defendant has failed to demonstrate that Ms. Loveday had authority to bind Ms. Jones, and as a result, the undersigned finds that the Motion to Compel is not well-taken.

While the parties address a variety of defenses to contract in their filings, the Court finds that Ms. Loveday's authority to bind Ms. Jones must be decided as an initial matter. With regard to actual agency, the Tennessee Court of Appeals has explained:

> A common-law agency arises when the principal assents for the agent to act on the principal's behalf, and the agent agrees. A person who is not in a mental condition to contract is not competent to appoint an agent for the purpose of contracting. An agency relationship is created only "at the will and by the act of the principal and its existence is a fact to be proved by tracing it to some act of the alleged principal and turns on facts concerning the understanding between the alleged principal and agent."

Barbee v. Kindred Healthcare Operating, Inc., 2008 WL 4615858, at *6 (Tenn. Ct. App. 2008) (internal citations omitted). With regard to apparent agency, "a principal is responsible for the

acts of an agent within his apparent authority only where the principal himself by his acts or conduct has clothed the agent with the appearance of authority, and not where the agent's own conduct has created the apparent authority." Id. (citing S. Ry. Co. v. Pickle, 197 S.W. 675, 677 (Tenn.1917)).

In Raiteri v. NHC Healthcare/Knoxville Inc., 2003 WL 23094413 (Tenn. Ct. App., Dec. 30, 2003), a wife was admitted to the defendant's nursing home, and her husband signed an admission agreement on her behalf. The admission agreement included an arbitration provision. At the time the documents were signed by the husband, the wife was physically infirm. Id. at *2. She had not, however, been adjudged to be mentally incompetent. The Court of Appeals found that the contract was unenforceable as a contract of adhesion and also found that the husband did not have actual or apparent authority to bind the wife to the arbitration provisions. Id. at *9.

Judge Greer cited Raiteri in finding that the defendant in Robinson had not demonstrated that the signatory to the DRP had authority to bind the plaintiff. 2011 WL 4431103 at *2. In Robinson, Nathaniel Robinson was admitted to Newport Health and Rehabilitation Center. At the time of admission, he needed assistance to walk, to transfer from a bed to a chair, to sit up, or to turn over in bed. Id. at *1. On the day after his admission, Mr. Robinson's wife was presented with a stack of paper work to sign, including a DRP. Ms. Robinson signed the DRP on the signature line for the resident; Mr. Robinson did not sign the form. Id. Judge Greer found that there was no evidence that Ms. Robinson had the express authority of Mr. Robinson to act on his behalf. Id. at *3. Moreover, Judge Greer found that Mr. Robinson's "act of allowing his wife to handle the admissions process" was not sufficient to demonstrate authority, where he took no other action to clothe her in the appearance of authority. Id.

Judge Greer found Necessary v. Life Care Centers of America, Inc., 2007 WL 3446636 (Tenn. Ct. App. Nov. 16, 2007), to be distinguishable. In Necessary, a wife executed an admissions agreement, which contained an arbitration agreement, on behalf of her husband. Id. at *1. The wife did not have a power of attorney. She argued that she had authority to sign all of the admission documents and make all of the decisions regarding her husband's admission, except she did not have his authority to sign an arbitration agreement. Id. at *5. The court in Necessary found such position untenable, and vacated the trial court's finding that the wife lacked authority to execute the arbitration agreement. Id. Judge Greer found that Necessary was distinguishable from the facts in Robinson because the wife in Robinson did not argue that she had express oral authority to sign any portion of the admission documents, and the defendant had not brought forth evidence demonstrating, by the preponderance of the evidence, that the wife had such authority. 2011 WL 4431103 at *3.

Ms. Loveday alleges and SSC apparently concedes that the DRP in the instant case is identical to the DRP in Robinson, because SSC and the defendant in Robinson are related business entities. The only potentially relevant distinction between Robinson and the instant case is that in Robinson the wife did not sign on the third signature line. The Court finds, however, that Ms. Loveday's use of the third signature line in the instant matter is inconsequential to the agency question for four reasons.

First, the DRP, in contrast to the RAA, offered only one signature line for any person other than the resident to sign the DRP regardless of his or her legal status. Stated differently, whereas the RAA offered a separate signature line for a legal representative, a separate signature line for an agent/power of attorney, and a separate signature line for a "Responsible Party"/family member, the DRP lumped all of these various capacities together and required

persons falling within *any* of these categories to execute on the third signature line. Thus, Ms. Loveday, who was only a family member, was forced to sign under a heading that covered "spouse, responsible party, legal guardian or power of attorney," and she was not afforded the opportunity to differentiate her status. The Court finds that the absence of alternative signature lines diminishes the relevance of the fact that Ms. Loveday signed on the third signature line.

Second, and in the same vein, the Court finds that the heading over the third signature line, which states that the third signature line is for a "spouse, responsible party, legal guardian or power of attorney," is ambiguous. SSC, who drafted and provided this document, drafted the third signature line in a manner that does not distinguish between any of these statuses. SSC now attempts to use this ambiguity to its favor, despite black-letter law that any such ambiguity must be interpreted against the drafter, see Hanover Ins. Co. v. Haney, 425 S.W.2d 590, 592 (Tenn. 1968). The Court cannot and will not interpret Ms. Loveday's signature on this line as deeming her a "legal guardian or power of attorney," where it is equally likely that she endorsed the third signature line simply as a "responsible party."

Third, Ms. Loveday has submitted a sworn statement to the Court attesting to the fact that she told SSC through NHRC personnel that she was not a power of attorney. [See Doc. 7-1, ¶ 4]. SSC has not submitted any sworn testimony to the contrary. Thus, to the extent her signature on the third signature line is or was ambiguous, Ms. Loveday has introduced an uncontroverted, sworn statement that she clarified to NHRC personnel that she was not a power of attorney.

Finally, on the same date, Ms. Loveday signed the RAA agreement as a "Responsible Party," and declined to sign as either a "Legal Representative" or an "Agent Signature." The Court finds that this implicit representation that she was not a legal representative or an agent

undercuts SSC's position that Ms. Loveday had apparent authority based upon her signature on the DRP.

For the reasons stated above, the Court finds that Ms. Loveday's signature on the third signature line cannot support a finding of apparent authority. More importantly, however, the Court finds that SSC has not brought forth any evidence to demonstrate that Ms. Jones acted in a manner that "clothed [Ms. Loveday] with the appearance of authority." See Barbee, 2008 WL 4615858, at *6. Apparent agency is judged based upon the principal's actions, not the agent's actions. Id. Thus, to the extent that Ms. Loveday's signature might possibly be interpreted as an act giving the appearance of agency, the act was that of Ms. Loveday (the agent) not Ms. Jones (the principal). Such an act cannot serve as the basis for finding apparent agency. Moreover, the Court finds that Ms. Jones's act of allowing Ms. Loveday to handle the admissions process was not sufficient to demonstrate authority, where she took no other action to clothe Ms. Loveday in the appearance of authority. See Robinson, 2011 WL 4431103 at *3.

Finally, at the hearing, SSC argued that the Court should equate a diagnosis of dementia to an adjuration of incompetency. SSC made this argument while referring generally to medical records that were not filed with its motion. At the time of the hearing, SSC's Motion to Compel had been pending for approximately six months, but SSC had not filed these medical records either with the motion or as a supplement to the motion. Moreover, when asked why this line of argument was not contained in SSC's motion or brief, counsel for SSC stated that the Motion to Compel was filed as a "placeholder motion" to allow further development of SSC's basis for relief after filing.

The Court finds, first, that SSC has failed to bring forth any legal or medical basis for equating a diagnosis of dementia to a finding of incompetency. Second, the Court finds that SSC

did not timely file any evidence of such diagnosis in relation to the Motion to Compel. Third, the Court finds that SSC's failure to develop this argument in its filings and failure to mention the argument prior to oral arguments constitutes waiver of this position.

Based upon the foregoing, the Court finds that, as in Robinson, SSC has not brought forth evidence demonstrating by the preponderance that Ms. Loveday had actual authority or apparent authority to act on Ms. Jones's behalf in agreeing to the DRP. Therefore, the undersigned finds that the request to compel arbitration and to stay this suit is not well-taken. Because the Court finds that Ms. Loveday lacked authority to enter into the DRP on Ms. Jones's behalf, the Court finds that it is unnecessary to address the allegations of adhesion and unconscionably.

## IV. CONCLUSION

Accordingly, the undersigned **RECOMMENDS**[2] that the Defendant's Motion to Compel Arbitration and Stay Lawsuit **[Doc. 4]** be **DENIED**.

Respectfully Submitted,

s/ C. Clifford Shirley, Jr.
United States Magistrate Judge

[2] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Civ. P. 72(b)(2). Such objections must conform to the requirements of Rule 72(b), Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985). The district court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive or general. Mira v. Marshall, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370 (6th Cir. 1987).